## In re FEDERAL BISCUIT CO.

### Appeal of WICKERSHAM.

(Circuit Court of Appeals, Second Circuit. November 10, 1914.)

### No. 16.

BANKRUPTCY (§ 350*)—PREFERRED CLAIMS—RENT—ABANDONMENT—WAIVER.

A landlord's right to a lien on his tenant's goods for one year's rent in arrears, conferred by Act Pa. June 16, 1836 (P. L. 777; 2 Purdon's Dig. [13th Ed.] p. 1558), sought to be enforced against a bankrupt by filing proof of landlord's claim prior to the first meeting of creditors, insisting on their right to priority, was not lost by a subsequent sale of the property by the bankrupt's trustee without notice to the landlord and a mingling of the proceeds with other of the bankrupt's assets.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 537; Dec. Dig. § 350.*]

Petition to Revise and Appeal from an Order of the District Court of the United States for the Southern District of New York.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

218 F.—48

On appeal by the trustee from an order, and also upon petition to revise said order, made by the District Court for the Southern District of New York, which awarded priority to a claim of the estate of William H. Brill for rent of the premises occupied by the bankrupt, which claim amounted to $2,354.55. The premises are located in Philadelphia.

The opinion of Referee Macgrane Coxe is as follows:

On April 17, 1912, the claim of the estate of William H. Brill, deceased, Caroline E. Medlar, and Elizabeth B. Medlar was filed in the office of the referee. Thereafter the trustee filed with the referee a petition asking that this claim, among others, be reconsidered and expunged. These objections were first brought on for hearing before the referee on August 1, 1912, when I was attended by counsel for the claimants and for the trustee, and the hearing was closed. Thereafter, and on November 6, 1912, a motion was made by the claimants' attorneys to reopen the hearings. This motion was granted, and the hearings proceeded, and considerable further testimony was taken, and on December 13, 1912, the hearings were finally closed.

This claim was filed in the amount of $2,354.55, and is for rent alleged to be due to the claimants for the premises situated at Nos. 1428–1434 Fairmount avenue, in the city of Philadelphia. The claimants demand priority of payment for the full amount of the said claim under the laws of the state of Pennsylvania and section 64b (5) of the Bankruptcy Act (Comp. St. 1913, § 9648), which provides that debts entitled to priority under the laws of any state shall be entitled to priority in bankruptcy. The testimony shows that the premises in question had been leased by the claimants, who are the owners, to the A. J. Medlar Company, a Pennsylvania corporation, by a lease executed on December 20, 1907, which expired by its terms on May 22, 1911. On August 11, 1911, the bankrupt purchased and took over the plant of the Medlar Company, and the contract for the sale of the said plant provided that the bankrupt corporation should assume and pay all just debts and obligations of the Medlar Company. The testimony shows that there was due and owing upon the lease from the Medlar Company to the owners, at the time of the purchase of the plant by the bankrupt, the sum of $4,174.55. The bankrupt entered into possession of the premises after the lease to the Medlar Company had by its terms expired, but an examination of the lease attached to the proof of claim shows that it contained the provision that unless, within three months of the expiration of the lease, a written notice should be given by either party to the other of intention to terminate the lease, it should continue upon the same terms and conditions for a further period of one year.

It appears by the testimony that after the bankrupt entered into possession, at which time rent was due under the lease amounting to $4,174.55, they delivered to the landlords $2,100 in stock of the bankrupt corporation, and on November 16, 1911, paid the sum of $1,000 in cash, reducing the claim to $1,074.55. Afterwards there accrued rent upon the premises for the months of September, October, November, and December, 1911, and eight days of January, 1912, amounting to $1,280, making the total amount due $2,354.55, as stated in their proof of debt filed herein. The claimants demand priority of payment for their claim under a statute of the state of Pennsylvania, known as the Act of June 16, 1836, § 83 (P. L. Pa. 777). It is provided in this act that "the goods and chattels being in or upon any messuage, lands or tenements which are or shall be demised for life, years or otherwise, taken by virtue of an execution and liable to distress of the landlord, shall be liable for the payment of any sums of money due for rent at the time of taking of such goods in execution, provided that such rent shall not exceed one year's rent." Section 64b (5) of the Bankruptcy Act enumerates, among the claims entitled to priority, "debts owing to any person, who by the laws of the states or the United States is entitled to priority."

The point raised in their reply brief by the trustee's attorneys, that the Pennsylvania statute has not been proved, is without merit. The federal courts take judicial notice of all statutes, whether state or federal. Foster's

Fed. Practice (4th Ed.) p. 863; Case v. Kelly, 133 U. S. 21, 10 Sup. Ct. 216, 33 L. Ed. 513. The above provision of the Pennsylvania statutes has been many times considered by the courts, which have held that property taken into the possession of a receiver in bankruptcy shall be considered for the purposes of the statute as taken under an equitable execution. Longstreth v. Pennock, 20 Wall. (87 U. S.) 575, 22 L. Ed. 451; In re Hoover (D. C.) 113 Fed. 136; Collier on Bankruptcy (10th Ed.) p. 910, and cases cited.

Upon the face of the claim, therefore, it would seem that the claimants are entitled to the payment of their claim out of the property on the leased premises. The trustee's attorneys, however, have raised several objections to the allowance of the claim, and advanced a number of reasons for expunging it as a prior claim, which they have argued with great earnestness, which we must consider in passing upon the claim. The first of these is that no lease between the claimants and the bankrupt has been proven to exist, and that, therefore, the claimants cannot take advantage of the statute to impress a lien upon the property on the leased premises.

As I read the Pennsylvania statute, it does not seem to me that a written lease is required, and that even under an oral lease for a year the landlord could take advantage of the priority given by the statute. Assuming, however, that a written lease is necessary under the statute, I think the existence of such a lease is shown by the evidence. Elizabeth B. Medlar testified that no notice of the termination of the lease had been given by the bankrupt to the landlord, and in the absence of such notice the lease did not expire until May 22, 1912. The trustee's attorneys refer to the correspondence and negotiations between the landlord and the bankrupt, and argue that the court must draw the inference from it that there was no lease in existence; but a careful reading of this correspondence and of the testimony regarding these negotiations convinces me that this had reference to the making of a new lease. I think that this real property must be held to have been "demised for years, life or otherwise."

The further objection to the claim is urged by the trustee's attorneys that the lien, if any, granted by the statute, attached only to the property in or upon the leased premises at the time of the filing of the petition in bankruptcy and that no proof has been submitted to show what the value of the said property was at that time. The only evidence upon this point is the testimony of Mrs. Medlar and of one C. A. Wettenhall, who was the president of the Medlar Company and had been the Philadelphia manager of the Federal Biscuit Company, and who was also one of the appraisers appointed by the court to appraise the Philadelphia assets of this bankrupt. Wettenhall testified that on or about January 20, 1912, he made an inventory and appraisal of the property in the Philadelphia plant. He testified from this appraisal that there was at the plant at that time machinery and equipment of the value of $5,278.70, manufactured stock of $1,255.36, and raw materials amounting to $3,469.54. He further testified that the value of the stock and fixtures on January 6th, at the time of the filing of the petition in bankruptcy, and on January 20th, when the inventory and appraisal was made, was practically the same, and that there was very little change in the value of the property on the premises between these dates. It further appears from his testimony that in the latter part of April, 1912, he made another inventory and appraisal, which the claimants have introduced in evidence (Claimants' Exhibit 2), and which shows personal property upon the premises at this time of the value of $6,684.74. The Philadelphia plant was subsequently sold by the receiver for $10,000, and this sale has been confirmed by the court. The trustee's attorneys call attention to the fact that a considerable portion of this purchase price may have represented the value of the good will of the business. The only further evidence tending to show the value of the property is that of Mrs. Medlar, who testified that during her visits to the bankrupt's plant she made some observation of the property on hand; but her testimony on this point is so indefinite and uncertain as to throw little light upon the value. After an examination of the inventory and appraisal in evidence, however, and a consideration of the uncontradicted testimony of Wettenhall, I am convinced that there was on the premises in question, at

the time of the filing of the petition, sufficient personal property upon which the lien of the landlords attached to cover their claim.

The trustee's attorneys further contend that even if we assume that the claimants have a valid lien under the statute, and that there was on the leased premises sufficient personal property upon which the lien attached to satisfy it, the lien has been lost because of the sale of the plant and the mingling of the funds realized from this sale with the other cash in the hands of the receiver. They also argue that the claimants have waived their lien by their failure to assert it prior to the sale of which they had due notice. The claimants, on the other hand, assert that they had no notice of the sale of the Philadelphia plant, and that, the said property having been sold by the receiver without notice to them, they have not lost their lien. The procedure followed in the sale of the Philadelphia property was as follows:

At the first meetings of creditors, duly held at the office of the referee on April 19, 1912, it appears that there was considerable discussion among the creditors regarding the proposed sale of the Philadelphia plant. It does not appear that these claimants were present or represented at that meeting, nor does it appear that they were named by the bankrupt in the schedules of its creditors. At this meeting, by a resolution offered by one of the attorneys for the receiver and unanimously adopted by the creditors present, the receiver was authorized to receive any private bid for certain properties of the bankrupt corporation, including this property, and to take such action thereon as he might be advised, looking to a sale of such properties, upon two days' notice by mail to the members named of two committees of creditors, and also "to any creditors or other parties who are here to-day and give their addresses and names to the stenographer as requesting such notice." Shortly after the first meeting, a bid was received by the receiver of $10,000 for the Philadelphia plant, and upon his petition, verified April 26, an order to show cause, returnable April 29, 1912, was made why he should not accept this offer, and notice thereof was given in accordance with the above-mentioned resolution. No one opposing on the return day of this order to show cause, an order was made by the referee, dated April 30, 1912, authorizing the acceptance of this bid and confirming the sale of the said property by the trustee for the sum of $10,000. Thereafter, and on or about May 6, 1912, an order was made in all respects confirming this sale by the United States District Court for the Eastern District of Pennsylvania in Bankruptcy. Thereafter, and on or about August 21, 1912, the trustee's objection to this claim was brought on for hearing before the referee.

Thereafter, and on or about October 9, 1912, the claimants here made application to the United States District Court for the Eastern District of Pennsylvania asking for a modification of the order of that court made, as hereinbefore stated, May 6, 1912. This application was made upon notice to the trustee in bankruptcy and he was heard thereon by counsel. The result was that on or about October 9, 1912, the said court modified its said order of May 6, 1912, as follows: It recited that it appeared to the court "that the order of sale of the assets of the Federal Biscuit Company, forming the Philadelphia plant, which was confirmed by an order of May 6, 1912, was entered and the sale had without notice to the said petitioners, and it appearing that the said petitioners have claimed as landlords of the premises whereon a part of the said assets were situate, for rent of the said premises," etc., and thereupon ordered as follows: "This court hereby confirms the private sale of all of the assets of the Federal Biscuit Company, forming Philadelphia plant, consisting of all the machinery, fixtures, merchandise, book accounts, horses, wagons, labels, good will, trade-marks, and any and all other assets of any nature or character whatsoever, comprising said Philadelphia plant, to C. A. Wettenhall, for the sum of $10,000, and authorizes the trustee in bankruptcy to execute a proper bill of sale for the transfer of said assets, *without prejudice to the right of Caroline E. Medlar, Elizabeth B. Medlar, and Girard Trust Company, trustee under the last will and testament of William H. Brill, deceased, to claim, as preferred creditors, from the fund derived from said sale, the amount of such lien as they*

*may have had upon such assets as were upon the premises owned by the said Caroline E. Medlar, Elizabeth B. Medlar, and Girard Trust Company, trustee under the last will and testament of William H. Brill, deceased."* The portion of said order underscored as above is the portion added to the original order by the modifying order of October 9, 1912. Thereafter, and on November 6, 1912, and December 7, 1912, the claimants made a motion before the referee to reopen the hearings on the trustee's objections to the claim, for the purpose of permitting this modified order to be introduced into the record, and this motion, after hearing of the trustee in opposition thereto, was duly granted.

It does not seem to me that there is anything in this record to show that these claimants ever had notice of these proceedings for the sale of the property, to which notice they were certainly entitled. The District Court for the Eastern District of Pennsylvania, after hearing counsel for the trustee, by its recital and order, seems to have so found, and I think that the record here is to the same effect. The trustee's attorneys refer to the testimony of Mrs. Medlar as showing that the claimants had actual knowledge of the proposed sale, but I do not think that her testimony bears out that contention. I have searched the record carefully for any evidence showing that these claimants did have actual knowledge, or even reasonable cause to be put upon their notice, and I fail to find any.

The attention of the referee is called to the decision in the case of Vollmer v. McFadgen; 20 Am. Bankr. Rep. 540, 161 Fed. 914, 88 C. C. A. 605. In that case it was held that the landlords' claim for priority for rent was disallowed, where the landlords had notice, but it appears that the court found as a fact in that case that the landlords had actual notice and where present at the sale and gave notice to the purchaser that they would hold him responsible for the rent. As all the circumstances of the sale of the Philadelphia plant, in this case, were apparently before the court when it made its order of October 9, 1912, I think that the finding of the court upon the question of notice is conclusive, and that it must be held that the claimants' right to establish their claim, as preferred creditors, was not prejudiced by the sale and by the order of confirmation.

Finally, counsel for the trustee contend that, if the claim is allowed, it should be reduced by the sum of $250. They point out that it appears in the testimony that for several months the provision of the lease for a monthly rental of $300 was modified by the landlords, and the sum of $250 accepted as a monthly rental. It appears from the testimony, however, that no change was made in the lease, and no evidence has been offered by the trustee to show that less than the sum of $300 a month was ever agreed upon between the bankrupt and the landlords, and no grounds appear for reducing the claim. The fact that the claimants received from the bankrupt the sum of $3,100 in stock and cash within the year does not, in my opinion, affect their case, and the question as to whether these payments were applied on rent past due on the current year's rent need not be passed on. The Pennsylvania statute does not seem to limit the claimants to rent accruing within the year preceding the bankruptcy, but limits the prior claim for rent to an amount which "shall not exceed one year's rent."

Upon all the facts, I must find that the claimants have established the claim entitled to priority under section 64b (5) of the Bankruptcy Act in the amount of $2,345.55, and an order may therefore be submitted allowing the claim of the estate of William H. Brill, deceased, Caroline E. Medlar, and Elizabeth B. Medlar as a prior claim in the said sum of $2,354.55.

Harold B. Elgar, of New York City, for appellant.

Stern, Barr & Tyler and Henry C. Moses, all of New York City, for respondents.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge. Priority was asserted by the claimants in the District Court for the balance due for rent of premises known as

Nos. 1428, 1430, 1432 and 1434 Fairmount avenue, Philadelphia, amounting to $2,354.55. The claim of priority is based upon a statute of Pennsylvania, which is as follows:

"Section 83. The goods and chattels being in or upon any messuage, lands or tenements, which are or shall be demised for life or years or otherwise, taken by virtue of an execution and liable to the distress of the landlord, shall be liable for the payment of any sums of money due for rent at the time of taking such goods in execution: Provided that such rent shall not exceed one year's rent.

"Section 84. After the sale by the officer of any goods or chattels as aforesaid, he shall first pay out of the proceeds of such sale the rent so due, and the surplus thereof, if any, he shall apply towards satisfying the judgment mentioned in such execution," etc.

Act June 16, 1836 (P. L. 777; 2 Purdon's Digest, [13th Ed.] p. 1558).

The premises in question were occupied by A. J. Medlar Company under a written lease by which that company agreed to pay $300 per month. This lease expired May 22, 1911, but it contained a clause that unless it were terminated by giving a notice in writing it should continue for a further period of one year on the same conditions. No such notice was given and the lease continued for another year. On August 11, 1911, the bankrupt purchased the Medlar Company's business and assumed the payment of the rent for the unexpired term. It has never paid the rent for the period occupied by it. After attempting to sell the property at auction and failing to get adequate bids, the trustee, with permission of court, sold the entire property for $10,000. The court allowed the claim for rent at $2,354.55, giving it a preference under 64b (5) of the Bankruptcy Act, which provides that among the debts entitled to priority are "debts owing to any person who by the laws of the states or the United States is entitled to priority."

It is not necessary to state the facts in detail as they appear in full in the careful opinion of the referee. There can be no doubt that the Pennsylvania law gives a lien for one year's rent to the landlord upon the goods and chattels of the tenant. This statute seems to apply directly to the present facts. But the appellant contends that the claimants waived their right to this lien. On April 17th, two days prior to the first meeting of creditors, the claimants filed proof of claim, insisting that they were entitled to priority under the Pennsylvania law. As the property was sold without notice to the claimants and without their knowledge, it is not easy to see how they could do more than they did do to preserve their rights. The statute is very plain and has been liberally construed by the courts of Pennsylvania. The trustee sold, without notice to the claimants, property upon which they had a lien and if any confusion resulted therefrom the hardship should not be visited upon the claimants. There is little doubt that there was property enough subject to the lien to pay their debt.

We see nothing to justify the assertion that the claimants lost their right to assert their priority or that they assented to the private sale which, as the final order expressly states, was made "without prejudice to the rights of Caroline E. Medlar, Elizabeth B. Medlar and Girard Trust Company, trustee, under the last will and testament of William H. Brill, deceased, to claim, as preferred creditors from the fund derived from said sale, the amount of such lien as they may have

had upon such assets as were upon the premises owned by said Caroline E. Medlar, Elizabeth B. Medlar and Girard Trust Company, trustee, under the last will and testament of William H. Brill, deceased."

The order is affirmed with costs.